IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 2:20-80-3 |
| ) | Judge Stephanie L. Haines |
| DEREK CALLOWAY ) | |

**OPINION AND ORDER**

Derek Calloway ("Defendant") stands charged with conspiracy to distribute and to possess with intent to distribute 28 grams or more of crack cocaine in violation of 21 U.S.C. §§ 846 (Count One) and with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Three) [Doc. 28].

Presently before the Court is Defendant's motion to suppress evidence [Doc. 150]. Defendant seeks suppression of all evidence seized from a residence located at 2836 Webster Avenue, Pittsburgh, Pennsylvania, pursuant to a search warrant issued by United States Magistrate Judge Patricia L. Dodge. The Government has filed a response in opposition to the motion [Doc. 160]. On August 30, 2021, the Court held oral argument on Defendant's motion to suppress and took the matter under advisement [Doc. 274]. Upon due consideration of the motion, response, and the arguments presented at oral argument, for the following reasons, Defendant's motion to suppress will be denied.

**I.     Background**

On May 11, 2020, Judge Dodge issued a search warrant for the Webster Avenue residence [Doc. 160-1 Warrant]. The warrant included a description of the search location, along with photographs of the residence [*Id.*, Attachment A], as well as a detailed description of the items to be seized [*Id.*, Attachment B]. The Affidavit in Support of the Search Warrant [Doc. 160-1 Affidavit] was authored and signed by ATF Special Agent Marc Wilner.

1

On May 13, 2020, agents executed the search warrant and seized a variety of evidence related to the target offenses, including $8,450 in United States currency, six rounds of 7.62 caliber ammunition, two Apple iPhones, several documents, a digital scale, and a semiautomatic Taurus 9mm pistol containing eight rounds of ammunition.

Defendant has filed a motion to suppress all evidence seized during the search of the Webster Avenue residence. Defendant raises the following grounds for suppression: (1) the warrant is facially defective and is not supported by probable cause; (2) the warrant is overbroad; (3) the search warrant affidavit contains a false allegation that Defendant was a member of a violent street gang; (4) the information in support of the affidavit was stale; and, (5) the search warrant affidavit failed to establish the veracity and reliability of a confidential source.

The Court will address each of these grounds in turn.

## II. Standard

The Fourth Amendment to the United States Constitution requires that search warrants be supported by probable cause. U.S. Const. amend. IV. Whether probable cause exists is to be determined by a practical and common sense approach. *Illinois v. Gates*, 462 U.S. 213 (1983). The appropriate inquiry is "whether, given all the circumstances set forth in the affidavit before [the magistrate], including the [veracity] and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238–39. As the Supreme Court observed in *Gates*, "probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts . . . ." *Id.*

In *Massachusetts v. Upton*, 466 U.S. 727 (1984), the Supreme Court emphasized that a reviewing court is not to conduct a "de novo probable cause determination," but is merely to decide "whether the evidence reviewed as a whole provided a substantial basis for the magistrate's finding

of probable cause." Thus, a search warrant is to be upheld as long as there is a "substantial basis" for a "fair probability" that specified evidence will be found in a particular place. *Id.*; *see also United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir.1983) (application for a search warrant must "establish that certain items are probably located at the present time in a certain place.").

In making this determination, a reviewing court is "confined in its decision to whether the information within the four corners of the affidavit established probable cause to issue the search warrant." *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000). "'The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner.'" *Id.* (quoting *United States v. Conley*, 4 F.3d 1200, 1206 (3d Cir. 1993)). "[S]tatements in an affidavit may not be read in isolation—the affidavit must be read as a whole." *Conley*, 4 F.3d at 1208 (quoting *United States v. Brown*, 3 F.3d 673, 678 n. 5 (3d Cir.1993)).

Moreover, the affidavit need not contain direct evidence linking the place to be searched to the crime. *United States v. Williams*, 124 F.3d 411, 420 (3d Cir.1997). "Instead, probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [contraband.]" *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir.1993) (internal quotation and citation omitted).

**III. Discussion**

As a general rule, a defendant seeking to suppress evidence seized pursuant to a search warrant has the burden of establishing that his Fourth Amendment rights were violated. *See United States v. Benoit*, 730 F.3d 280, 288 (3d Cir. 2013); *United States v. Acosta*, 965 F.2d 1248, 1256 n. 9 (3d Cir. 1992). Here, Defendant has failed to meet that burden as to any of his five asserted grounds for suppression.

A.  **Probable Cause**

Defendant first argues that the warrant is "facially defective" and not supported by probable cause. He contends that much of the information contained in the supporting affidavit largely consists of boilerplate language, and that the affidavit lacks sufficient detail to link the Webster Avenue residence to any criminal activity, or to link him to that residence.

In order to uphold the probable cause determination, this Court need only determine that Judge Dodge had a substantial basis for finding that evidence related to the target offenses, including, *inter alia*, drug distribution activities and firearms violations, would be found in the Webster Avenue residence at the time of the search. Upon review of the affidavit, this Court is satisfied that Judge Dodge had a substantial basis for her probable cause determination.

The affidavit begins by setting forth the affiant's background, training and experience in narcotics investigations, as well as his personal knowledge of the types of evidence commonly associated with drug trafficking offenses. Although Defendant attempts to dismiss this portion of the affidavit as mere "boilerplate," it is important in establishing the affiant's basis of knowledge regarding drug traffickers and how they typically operate. In further support of his knowledge of these activities, and of Defendant's potential involvement in such activities, the affiant further reports that he is aware of a parallel investigation into drug trafficking involving others who have some association with Defendant.[1]

The foregoing information provides important background to the affiant's recitation of the additional information provided in support of probable cause. The affidavit sets forth numerous bases for a finding of probable cause, including: (1) information received from a confidential source, who indicated he/she had been purchasing heroin and cocaine base from Defendant for

---

[1] Defendant's challenge to this information will be addressed in more depth in Section III.C of this opinion.

4

approximately two years; (2) two separate controlled purchases of cocaine base by the confidential source from Defendant in March 2020 and April 2020; (3) information linking Defendant to other known drug traffickers, specifically Victor Simmons and Dallas Vickers; and, (4) then-recent surveillance of Defendant at the Webster Avenue residence in May 2020. Reading the affidavit as a whole, the Court believes that the information set forth in the affidavit provides more than a "substantial basis" for a "fair probability" that evidence of drug trafficking activities, as well as the other target offenses, would be found at the Webster Avenue residence.

Defendant's primary challenge to the probable cause determination is that the affidavit does not provide sufficient information either to link 2836 Webster Avenue to drug trafficking activity, since neither of the controlled buys took place inside that address,[2] or to link him to that residence.

However, it is well-settled that direct evidence linking a residence to criminal activity is not required to establish probable cause. *See Whitner*, 219 F.3d at 297; *Conley*, 4 F.3d at 1207. "While ideally every affidavit would contain direct evidence linking the place to be searched to the crime, it is well established that direct evidence is not required for the issuance of a search warrant." *Jones*, 994 F.2d at 1056. Instead, probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested. *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002). As already noted, probable cause "can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal

---

[2] The first controlled buy in April 2020 took place in the confidential source's vehicle on the street outside the Webster Avenue residence. The second in May 2020 occurred on the South Side of Pittsburgh [Doc. 160-1 Affidavit ¶¶ 23-26].

inferences about where a criminal might hide stolen property.'" *Jones*, 994 F.2d at 1056 (citation omitted).

The Third Circuit Court of Appeals has recognized "that evidence . . . is likely to be found where the [drug] dealers reside." *Burton*, 288 F.3d at 103 (citing *Whitner*, 219 F.3d at 297–98). While it is reasonable to infer that drug dealers often store evidence of drug crimes in their residences, case law directs that application of that inference is to be based on evidence supporting three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities. *Burton*, 288 F.3d at 104.

Here, there is sufficient evidence set forth in the affidavit to support each premise. First, the affidavit contains information supporting the premise that Defendant is a drug dealer, including the information received from the confidential source and the two controlled purchases, as well as Defendant's association with other known dealers. Second, contrary to Defendant's contention that there is no information linking him to the Webster Avenue residence, the affidavit contains averments that a subpoena return from Sprint indicated that Defendant's phone number is subscribed in his name with the address of 2836 Webster Avenue, and that a subpoena return from Comcast confirmed that Defendant is the account holder for that address [Doc. 160-1 Affidavit ¶¶ 25-26]. Moreover, Defendant was observed entering and leaving the Webster Avenue residence on multiple occasions, including immediately prior to the April 2020 controlled purchase, when he was observed exiting the residence and approaching the confidential source's vehicle on the street outside of it [Doc 160-1 Affidavit ¶ 23]. This observation likewise is evidence supporting the third premise, which is linking the Webster Avenue residence to Defendant's drug activities, along with the surveillance observations in May 2020 of Philip Robinson, another known drug

dealer, arriving at that residence, and Defendant later leaving the residence and returning to it a short time later [Doc. 160-1 Affidavit ¶ 30].

The Court is satisfied that the evidence set forth in the affidavit is sufficient to support a reasonable inference that evidence of drug trafficking activity, as well as the other target offenses, would be stored at 2836 Webster Avenue.

**B.     Overbroad**

Next, Defendant argues that the warrant lacks particularity and is overbroad. Specifically, he contends that the warrant is a general warrant that allowed law enforcement to rummage through his property, and to seize items that had nothing to do with any criminal activity. See *United States v. Yusuf*, 461 F.3d 374, 393 (3d Cir. 2006) (General warrants violate the Fourth Amendment because they essentially authorize "a general exploratory rummaging in a person's belongings.") (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). The Court disagrees.

The Fourth Amendment provides that warrants must "particularly describ[e] the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. Thus, under the Fourth Amendment, "a warrant may not be issued unless . . . the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011). But, the particularity requirement "must be applied with a practical margin of flexibility," *United States v. Fattah*, 858 F.3d 801, 819 (3d Cir. 2017), as amended (June 12, 2017) (citation omitted), and the breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate. *Yusuf*, 461 F.3d at 395.

Here, the warrant provides a description of the items to be seized, to include "[a]ll records, instrumentalities, fruits and evidence *relating to violations of federal felony offenses*" [Doc. 160-

1 Search Warrant Attachment B]. The warrant specifically enumerates the target offenses, and in Sections I and II describes the types of items which may constitute the "instrumentalities, fruits and evidence" of those target offenses. The Court finds that the warrant as written satisfies the particularity requirement of the Fourth Amendment, as it specifically describes, and authorizes the seizure of, only those items that might be instrumentalities, fruits and evidence of the target offenses, or items used to facilitate those offenses.

Despite Defendant's contention, a warrant is not general unless it can be said to "vest the executing officer with unbridled discretion to conduct an exploratory rummaging through [defendant's] papers in search of criminal evidence." *United States v. Leveto*, 540 F.3d 200, 211 (3d Cir. 2008) (quoting *United States v. Christine*, 687 F.2d 749, 753 (3d Cir.1982)). The warrant at issue here did not do so. As already noted, it limited the search to items connected with the target offenses – possession with intent to distribute a controlled substance, unlawful use of a communication facility, conspiracy, money laundering and possession of a firearm by a convicted felon and possession of a firearm in furtherance of a drug trafficking crime. The Court is satisfied that the warrant is sufficiently particular as to preclude any "exploratory rummaging" and is not invalid as a general warrant.

### C.    False Statement

Defendant next challenges information in the warrant relating to a "parallel investigation involving a violent street gang." Defendant contends that the affidavit falsely accuses him of being a member of that street gang, and argues that this allegation is baseless and prejudicial and should be stricken from the affidavit.

Defendant's challenge to the affidavit on this ground is governed by the decision of the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978). Applying the *Franks*

8

standard, the Court finds that Defendant has failed to make the substantial preliminary showing necessary to warrant an evidentiary hearing on this issue.

The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement in, or the omission of material information from, a search-warrant affidavit. *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2010). In *Franks*, the Supreme Court determined that, upon an appropriate showing, a defendant has a right to an evidentiary hearing to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a search warrant, and created a mechanism to allow the defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid. *Yusuf*, 461 F.3d at 383.

"The right to a *Franks* hearing is not absolute, however." *Pavulak*, 700 F.3d at 665. Rather, to establish that a hearing is warranted, *Franks* requires the defendant to: (1) make a "substantial preliminary showing" that the affiant knowingly or recklessly included a false statement in, or omitted facts from, the affidavit; and, (2) demonstrate that the false statement or omitted facts are "necessary to the finding of probable cause." *Id.*; *Franks*, 438 U.S. at 155–56.

Here, Defendant takes issue with the information set forth in ¶ 19 of the affidavit relating to a parallel investigation involving "associates of [Defendant], including Victor SIMMONS, Phillip ROBINSON, and others, who are members and associates of the street gang, '11 Hunnit' …." [Doc. 160-1 Affidavit]. Later, the affiant states that he is aware of a relationship between Simmons and Defendant, and that they are "both members of the '11 Hunnit' street gang" [Doc. 160-1 Affidavit ¶ 29]. Defendant contends the statement that he is a member of a violent street gang is false, and that all of the information in the affidavit relating to the parallel investigation is highly prejudicial.

As an initial matter, the Court notes that nowhere in the affidavit does the affiant refer to the 11 Hunnit street gang as "violent." In addition, whether information contained in an affidavit is "prejudicial" is not the standard. Instead, in order to obtain a *Franks* hearing, a defendant as an initial matter is required to make a substantial preliminary showing that the affiant knowingly and recklessly included a false, not a prejudicial, statement in the affidavit.

Here, the only statement that Defendant alleges is false is that he is a member of the 11 Hunnit street gang.[3] However, in order to make the requisite substantial preliminary showing, a defendant cannot rest on mere conclusory allegations, but rather must specifically identify the alleged false statements or omissions in the affidavit and present an offer of proof contradicting the affidavit, as well as a statement of supporting reasons. *Franks*, 438 U.S. at 171. Defendant has offered no proof, via a sworn affidavit or through any witness statements, that he in fact is not a member of 11 Hunnit, other than his conclusory assertion to the contrary. In any event, even if the Court were to assume he is not, Defendant likewise has offered nothing to suggest that the affiant's isolated statement that he is a member of that gang amounts to anything beyond negligence or innocent mistake. *See Yusuf*, 461 F.3d at 383.

Moreover, *Franks* further instructs that even when a substantial preliminary showing has been made, no hearing is required if there remains sufficient content in the affidavit to support a finding of probable cause after any material that is the subject of the alleged falsity or reckless disregard is set aside. *Franks*, 438 U.S. at 171–72. Thus, when faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit, and, when

---

3   There is ample evidence in the affidavit supporting the affiant's statements that Defendant is associated with Simmons, Vickers and Robinson. The affiant states that Defendant and Simmons were observed together on multiple occasions during the course of the investigation, and that investigators also observed over 500 telephone contacts between Defendant and Vickers between February 15, 2020, and March 8, 2020 [Doc. 160-1 Affidavit ¶ 29]. In addition, Defendant and Robinson both were observed at the Webster Avenue residence on May 1, 2020 [*Id.* ¶ 30].

faced with an omission, the court must remove the falsehood created by the omission by supplying the omitted information to the original affidavit. *Yusuf*, 461 F.3d at 384. If, upon the excision of false statements, and/or the addition of omitted information, there remains probable cause to support the issuance of the warrant, the false statements and omissions are not material to the original probable cause determination, and no *Franks* hearing is necessary. *Id.* at 383; *Franks*, 438 U.S. at 171–72.

Here, even if the Court were to excise from the affidavit the assertion that Defendant is a member of the 11 Hunnit street gang, more than sufficient probable cause would remain to support the issuance of the warrant. In fact, even if the Court were to excise all statements relating to the parallel investigation, there still would be probable cause supporting the warrant, based on the information provided by the confidential source, the controlled purchases, and the surveillance of 2836 Webster Avenue.

Accordingly, because Defendant has failed to make a substantial preliminary showing that the affiant knowingly or recklessly included a false statement in the affidavit, no *Franks* hearing is required in this case. And, even assuming arguendo that the challenged statement is false, Defendant also has failed to show that it was material to the determination of probable cause. The Court therefore finds that the inclusion in the affidavit of the statement that Defendant was a member of the 11 Hunnit street gang, even if false, is insufficient to warrant a *Franks* hearing, or to overcome the presumption of validity of the search warrant.

**D.    Staleness**

Defendant's next argument is that the information contained in the affidavit was stale. Specifically, Defendant contends that because the first controlled purchase occurred in March 2020, outside the home, and the second controlled purchase took place in April on the South Side

and cannot be linked to the Webster Avenue residence, the information in the affidavit was insufficient to support a fair probability that evidence of drug trafficking would be found in the residence when the warrant was issued in May 2020. Defendant's argument is without merit.

It is well-settled that the "[a]ge of the information supporting a warrant application is a factor in determining probable cause." *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir.1993). "If too old, the information is stale, and probable cause may no longer exist." *Id.* However, while the age of the information supporting a warrant application is a factor in determining probable cause, age alone does not determine staleness. *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002). Rather, other variables such as the nature of the crime and the type of evidence to be seized also must be examined. *Id.*; *Harvey*, 2 F.3d at 1322. Probable cause to search exists where information suggests that the items sought will be in the location searched at the time the warrant issues. *Tehfe, supra*, 722 F.2d at 1119.

"[W]hen an activity is of a protracted and continuous nature, 'the passage of time becomes less significant.'" *Tehfe*, 722 F.2d at 1119 (quoting *United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir.1973)). Thus, when the criminal activity has been going on continuously for years, staleness is of less concern. *Williams*, 124 F.3d at 420. Furthermore, "[t]he fact that evidence of the suspected criminal activity continued up through the last weeks before the search strongly suggests that the information in the affidavit was not stale." *Id.* at 421.

Here, the information set forth in the affidavit was not stale. The warrant was issued a mere two months after the first controlled purchase and one month after the second controlled purchase. In addition, Defendant completely overlooks the information in the affidavit regarding the then-recent surveillance of Defendant and the Webster Avenue residence in early May 2020 [Doc. 160-1 Affidavit ¶ 30]. Moreover, reading the affidavit as a whole, the information set forth

is sufficient to support the affiant's belief that the drug trafficking activity taking place was protracted and continuous, and that it was ongoing just ten days prior to the warrant application on May 11, 2020. Accordingly, the information set forth in the affidavit was not stale, and provided a fair probability that evidence of drug trafficking activity still would be found at 2836 Webster Avenue at the time the warrant was issued.

### E. Veracity and Reliability of Confidential Source

Defendant's final ground for suppression is that the information in the affidavit fails to establish the veracity and reliability of the confidential source. He argues that the affidavit lacks specifics as to the confidential source's reliability, and that the information provided was not independently corroborated. Defendant further challenges the reliability of the confidential source in light of his/her past criminal conviction for drug possession and history of narcotics use, and because he/she was cooperating for monetary gain. The Court likewise finds this argument to be without merit.

"A magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause." *United States v. Stearn*, 597 F.3d 540, 555 (3d Cir. 2010). However, "[i]nformants are not presumed to be credible, and the government is generally required to show by the totality of the circumstances either that the informant has provided reliable information in the past or that the information has been corroborated through independent investigation." *Yusuf*, 461 F.3d at 384 (emphasis added). "It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" *Gates*, 462 U.S. at 244–45 (citation omitted).

Here, the affidavit states that the affiant interviewed the confidential source in February 2020 [Doc. 160-1 Affidavit ¶ 20]. The source stated that he/she had been purchasing heroin and cocaine base from Defendant for approximately two years; that he/she had been contacting Defendant at a specific telephone number to purchase narcotics; and that Defendant was known by the source to possess firearms [*Id.* Affidavit ¶ 21]. As to veracity and reliability, the affiant states that he deemed the information reliable based in part on independent corroboration by law enforcement, as well as the source's previous cooperation with law enforcement [*Id.* ¶ 20].

Under the totality of the circumstances, the Court is satisfied that the statements of the confidential source are sufficiently reliable to bolster the probable cause determination. As the affiant noted, some of the information was independently corroborated by law enforcement and other sources. Sprint confirmed that the telephone number that the confidential source identified as using to contact Defendant is in fact registered in Defendant's name, and the information that Defendant is a cocaine base dealer is corroborated by the two purchases of cocaine base by the confidential source from Defendant.

Nor is the confidential source's history of a prior conviction for possession of a controlled substance and past drug use fatal to the reliability of the information he/she provided. As other courts have observed, it certainly is not uncommon for informants to have checkered pasts, and that fact alone does not make them, or the information they provide, unreliable. *See, e.g., United States v. Sanchez*, 246 Fed. Appx. 803, 805 (3d Cir. 2007) ("that the Informant is an unsavory character with a questionable moral compass does not, per se, doom a finding of probable cause").

The fact that the confidential source was cooperating for monetary gain likewise does not destroy his credibility. *See Gates*, 462 U.S. at 234 ("even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a

statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case"). Instead, "[c]ourts may consider both the reliability of the informant and the reliability of the information," and probable cause is to be determined "by looking at the 'totality of the circumstances,' not isolated facts about . . . character." *Id.* at 805–806 (emphasis added).

Here, looking at the totality of the circumstances, there was a substantial basis to credit the *information* provided by the confidential source, notwithstanding any questions about his/her character or motives. The information provided was sufficiently corroborated by law enforcement and others, and the source had proven to be reliable in the past. Accordingly, the issuance of the warrant based in part on the information provided by the confidential source was not erroneous.

**F.     Good Faith**

Finally, even assuming arguendo that the search warrant in this case was invalid for any of Defendants' asserted grounds, the Court nevertheless would find that the evidence seized pursuant to that warrant should not be suppressed because the good faith exception would apply.

When the government seeks to admit evidence collected pursuant to an illegal search or seizure, the judicially created doctrine known as the exclusionary rule at times suppresses that evidence and makes it unavailable at trial in order to deter Fourth Amendment violations. *Herring v. United States*, 555 U.S. 135, 139 (2009). However, even when the government violates the Fourth Amendment, ill-gotten evidence will not be suppressed when the good faith exception to the exclusionary rule applies. *United States v. Katzin*, 769 F.3d 163, 169–170 (3d Cir.2014); *United States v. Leon*, 468 U.S. 897, 920–26 (1984) (refusing to exclude fruits of unreasonable search because officer acted with objective good faith on later invalidated warrant).

Despite its connection to the Fourth Amendment, there is no constitutional right to have the evidentiary fruits of an illegal search or seizure suppressed at trial. *Katzin*, 769 F.3d at 170; *Davis v. United States*, 564 U.S. 229, 236 (2011). Accordingly, simply because a Fourth Amendment violation occurs does not mean that exclusion necessarily follows. *Herring*, 555 U.S. at 140. Rather, "exclusion 'has always been our last resort, not our first impulse.'" *Id.* (quoting *Hudson v. Michigan*, 547 U.S. 586, 591(2006)).

"Application of the exclusionary rule is instead limited to those 'unusual cases' in which it may achieve its objective: to appreciably deter governmental violations of the Fourth Amendment." *Katzin*, 769 F.3d at 170; *Leon*, 468 U.S. at 909, 918. Where the particular facts of a case indicate that law enforcement officers "act[ed] with an objectively 'reasonable good-faith belief that their conduct [was] lawful, or when their conduct involve[d] only simple, 'isolated' negligence," there is no illicit conduct to deter. *Katzin*, 769 F.3d at 171 (quoting *Leon*, 468 U.S. at 909). Alternatively, where law enforcement conduct is "deliberate, reckless, or grossly negligent" or involves "recurring or systemic negligence," deterrence holds greater value and often outweighs the associated costs. *Davis*, 564 U.S. at 238 (quoting *Herring*, 555 U.S. at 144).

"Put differently, exclusion is appropriate only where law enforcement conduct is both 'sufficiently deliberate' that deterrence is effective and 'sufficiently culpable' that deterrence outweighs the costs of suppression." *Katzin*, 769 F.3d at 171; *Herring*, 555 U.S. at 144. Thus, determining whether the good faith exception applies requires courts to answer the "objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Herring*, 555 U.S. at 145 (quoting *Leon*, 468 U.S. at 922 n. 23).

Here, the Court is satisfied that the officers acted with a reasonable, good faith belief that they were operating lawfully pursuant to a valid warrant in searching 2836 Webster Avenue for evidence related to the target offenses. Thus, under the circumstances of this case, the Court would find that the conduct of law enforcement was neither "sufficiently deliberate" that deterrence would be effective nor "sufficiently culpable" that deterrence would outweigh the costs of suppression, even if the search were to be deemed unconstitutional.

Accordingly, even had the Court found the warrant to be invalid, there would be no basis to suppress any evidence seized pursuant to that warrant because the officers' reliance on its validity in executing it was objectively reasonable.

### IV.   Conclusion

It is axiomatic that "[a] 'grudging or negative attitude by reviewing courts towards warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Jones*, 994 F.2d at 1057 (quoting *Ventresca*, 380 U.S. 102, 108 (1965)). Accordingly, "'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" *Jones*, 994 F.2d at 1055 (quoting *Ventresca*, 380 U.S. at 109).

This is not even a doubtful or marginal case. Judge Dodge, considering the totality of the circumstances set forth in the affidavit, determined that there was a fair probability that evidence relating to the target offenses would be found at 2836 Webster Avenue, and issued a warrant to search that location. There is a substantial basis supporting her probable cause determination. The evidence set forth in the affidavit is sufficient to support a reasonable inference that evidence of drug trafficking activity likely would be stored at 2836 Webster Avenue, and that Defendant was connected to that residence. The warrant sets forth the items to be seized with sufficient

particularity, and is not overly broad. Defendant also has failed to make a substantial preliminary showing that the affiant knowingly or recklessly made a false statement in the affidavit that was necessary to the probable cause determination. The information set forth in the affidavit was not stale, and the veracity and reliability of the confidential source is adequately established in the affidavit. Finally, even if the Court were to find the search warrant invalid, suppression would not be warranted under the good faith exception.

Accordingly, finding no constitutional violation, Defendant's motion to suppress evidence will be denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:20-80-3 |
| | ) | Judge Stephanie L. Haines |
| DEREK CALLOWAY | ) | |

## ORDER OF COURT

AND NOW, this 28th day of March, 2022, upon due consideration of the motion to suppress evidence [Doc. 150] and the Government's response thereto [Doc. 160], and, for the reasons set forth in the accompanying Opinion, IT IS ORDERED that Defendant's motion to suppress evidence [Doc. 150] hereby is **denied**.

Stephanie L. Haines
United States District Judge

cc/ecf: All counsel of record